UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARITA ZAMORA,<br><br>Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION,<br><br>Defendant. | Case No. 23-cv-04223-JST<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF No. 19 |

Before the Court is Defendant Costco Wholesale Corp.'s ("Costco") motion for summary judgment. The Court will grant the motion.

## I.    BACKGROUND

Plaintiff Margarita Zamora brought this action against her former employer Costco alleging that Costco both discriminated against her based on her disability and failed to accommodate her disability in violation of California's Fair Employment and Housing Act ("FEHA"). Zamora began working at Costco in 1996 and has worked in various departments, including management, during her time there. ECF No. 1-1 ¶¶ 7–8. On March 31, 2018, while most recently working as a stocker for the electronics department at Costco's Redwood City Warehouse #1042, Zamora sustained a workplace injury when she fell off a ladder and injured her right shoulder. *Id.* ¶ 9; ECF No. 19-1 at 8. Prior to her injury, Zamora's job as a stocker required her to perform several physically demanding functions, including stocking products, moving pallets from the sales floor, and assisting customers to load large items into their carts. ECF No. 19-1at 81–82. Those functions required her to frequently lift items weighing 11 to 50 pounds and occasionally lift items weighing between 51 and 75 pounds. *Id.*

Following Zamora's injury, Costco temporarily modified her position to allow her

shoulder to heal—placing her in sections of the warehouse that required her only to handle small items. ECF No. 19-1 at 18. After several weeks of this modified arrangement, Costco informed Zamora that it could no longer keep her on this modified work placement and that she would have to file an incident report to continue working. *Id.* at 19.

On April 12, 2018, a workers' compensation medical provider who examined Zamora released her to work with restrictions to avoid lifting, carrying, pushing, or pulling more than ten pounds. ECF No. 19-1 at 27–28. Trina Sanchez, the General Manager of the Redwood City Warehouse #1042, advised Zamora that Costco would offer her temporary transitional duty as a stocker in the clothing department as an accommodation. *Id.* at 119. This temporary transitional duty excused Zamora from performing any job duties requiring that she lift more than ten pounds—without any lost of pay—with the understanding that she would later be re-evaluated to determine if she could return to her regular Stocker position. *See id.* By July 2018, Zamora's shoulder injury had not improved, and Zamora again accepted temporary transitional duty to allow her to work with the same medical restrictions. *Id.* at 121. On September 25, 2018, Zamora's medical restrictions remained the same, and Zamora requested a workers' compensation leave of absence, which Costco granted. *See id.* at 125.

On January 31, 2019, Zamora had surgery on her right shoulder and remained on a medical leave of absence. ECF No. 1-1 ¶ 10. On September 17, 2019, Costco's workers' compensation claims administrator provided Zamora with a letter offering her a temporary opportunity to work in its Interim Community Employment program organizing and filing documents. ECF No. 19-1 at 136–38. When this temporary position ended, Costco approved another medical leave of absence. *Id.* at 140–46. By August 2020, Zamora's primary treating physician deemed her to have reached maximum medical improvement and prescribed permanent restrictions that she could not lift, carry, push, or pull more than ten pounds using her right shoulder. ECF No. 19-1 at 44–45, 161, 165.

On September 23, 2020, Costco met with Zamora in a Job Assessment Meeting ("JAM") to determine whether Costco could provide reasonable accommodations that would allow her to return to work as a stocker. ECF No. 19-1 at 53. In this meeting, Sanchez and a member of

2

1  Costco's Integrated Leave team discussed each essential function of the stocker position with
2  Zamora.  ECF No. 19-1 at 178–82.  Zamora acknowledged that she was unable to perform any
3  functions that required her to lift more than ten pounds but suggested that she could perform
4  modified functions, such as taking care of the setup tasks for clothing while other stockers did the
5  lifting.  *Id.* at 179.

6  Sanchez informed Zamora that it appeared that no modifications or reasonable
7  accommodations existed that would allow her to perform all the essential functions of the stocker
8  position.  *Id.* at 178–80.  Sanchez also provided Zamora a list of four open positions for her to
9  consider: (1) general stocker for the a.m. shift, (2) general stocker for the p.m. shift, (3) front end
10 assistant, and (4) meat cutter.  ECF No. 19-1 at 180.

11 Each of the first three positions would require Zamora to push, pull, and lift more than ten
12 pounds, and the meat cutter position would be a promotional position that would also require
13 Zamora to perform physically demanding functions.  *See id.* at 180–82.  Sanchez thus determined
14 that Zamora could not fill any of the available vacant positions with or without reasonable
15 accommodations.  *Id.*  After the JAM, Costco informed Zamora that it would continue to provide
16 her with job postings for the next 60 days, but that if she could not return to work, Costco could
17 terminate her employment at the conclusion of her leave of absence.  *Id.* at 185–86.  On December
18 1, 2020, Sanchez sent a letter to Zamora confirming that Zamora had exhausted her leave of
19 absence and was unable to return to work and thus had until December 12, 2020, to tender her
20 resignation.  *Id.* at 188.  On January 29, 2021, Costco terminated Zamora's employment.  ECF No.
21 19-1 at 190.

**II.  JURISDICTION**

This Court has jurisdiction under 28 U.S.C. § 1332(a).

**III.  LEGAL STANDARD**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is

3

1  genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving
2  party. *See id.*
3        A court shall grant summary judgment "against a party who fails to make a showing
4  sufficient to establish the existence of an element essential to that party's case, and on which that
5  party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an
6  essential element of the nonmoving party's case necessarily renders all other facts immaterial."
7  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial
8  burden of identifying those portions of the record that demonstrate the absence of a genuine issue
9  of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the
10 pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and
11 admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See*
12 *id.* at 324 (citing Fed. R. Civ. P. 56(e)).
13       For purposes of summary judgment, the court must view the evidence in the light most
14 favorable to the non-moving party, drawing all justifiable inferences in that party's favor. *AXIS*
15 *Reinsurance Co. v. Northrop Grumman Corp.*, 975 F.3d 840, 844 (9th Cir. 2020). If, as to any
16 given material fact, evidence produced by the moving party conflicts with evidence produced by
17 the nonmoving party, the Court must assume the truth of the evidence set forth by the nonmoving
18 party with respect to that material fact. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013).
19 However, facts must be viewed in the light most favorable to the nonmoving party only if there is
20 a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The court's
21 function on a summary judgment motion is not to make credibility determinations or weigh
22 conflicting evidence. *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017).

## IV.   DISCUSSION

### A.   FEHA Disability Discrimination and Reasonable Accommodation

FEHA provides that it is an "unlawful employment practice" for any employer, "because of the . . . physical disability . . . of any person . . . to discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Cal. Gov't Code § 12490(a). To establish a prima facie case of disability

discrimination, a plaintiff must establish that she (1) suffered from a disability; (2) could perform the essential duties of the job with or without reasonable accommodations, meaning that she was a "qualified individual"; and (3) was subjected to an adverse employment action because of the disability. *See Green v. California,* 42 Cal. 4th 254, 262 (2007); *Brundage v. Hahn,* 57 Cal. App. 4th 228, 236 (1997).

If the plaintiff establishes a prima facie case, then "the burden shifts to the employer to rebut the presumption by producing admissible evidence . . . that its action was taken for a legitimate nondiscriminatory reason." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 355–56 (2000). If the employer meets that burden, then "[t]he plaintiff must then have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive . . . . The ultimate burden of persuasion on the issue of actual discrimination remains with the plaintiff." *Id.* at 356. To prevail, the plaintiff must show that his or her disability or perceived disability "was a substantial factor motivating the adverse employment action." *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 225 (2013). "If a rational trier of fact could, on all the evidence, find that the employer's action was taken for impermissibly discriminatory reasons, summary judgment for the defense is inappropriate." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

Similarly, the elements of a failure to accommodate claim are: "'(1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the plaintiff's disability.'" *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 498 (9th Cir. 2015) (quoting *Scotch v. Art Inst. of California-Orange Cty., Inc.*, 173 Cal. App. 4th 986, 93 (2009)).

"FEHA does not obligate an employer to choose the best accommodation or the specific accommodation a disabled employee or applicant seeks," only a "reasonable" one. *Raine v. City of Burbank,* 135 Cal. App. 4th 1215, 1222 (2006). A reasonable accommodation is "a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired." *Nadaf–Rahrov,* 166 Cal. App. 4th at 974. Examples include job restructuring, modified work schedules, and reassignment to a vacant position. "Although the question of reasonable accommodation is ordinarily a question of fact, when the undisputed

evidence leads to only one conclusion as to the reasonableness of the accommodation sought, summary judgment is proper." *Raine,* 135 Cal. App. 4th at 1227 n.11.

### 1. Whether Zamora was a "Qualified Individual"

Costco primarily argues that Zamora could not perform most of the essential functions of her stocker position with or without reasonable accommodations, including "lifting, carrying, pushing and pulling items in the warehouse to display or stock aisles and shelves with merchandise." ECF No. 19 at 17–19. Zamora does not appear to contest that those functions were "essential" or that, following her injury, she was no longer able to perform those functions. Instead, she argues that there "were a lot of tasks she could have performed, including greeting, receipts, handling smaller items, making customer service phone calls and getting cross trained to work in the bakery." ECF No. 20 at 7. She further argues that she had "expressed interest in the part time position in merchandising, but she was never accepted for that position" and that "her immediate supervisor discouraged her from applying to that position." ECF No. 20 at 7.

"California law is emphatic that an employer has no affirmative duty to create a new position to accommodate a disabled employee." *Raine,* 135 Cal. App. 4th at 1224. Specifically, "an employer is not required to create light-duty positions for purposes of accommodating a disabled employee unable to perform the essential functions of the position for which he or she was hired," and "an employer who has created such a temporary assignment has no duty to transform that accommodation into a permanent position once it is informed the employee's disability has become permanent." *Id.* at 1224; *see also Watkins v. Ameripride Servs.,* 375 F.3d 821, 824 (9th Cir. 2004) (employer not required to create full-time special delivery position that did not previously exist). Accordingly, Costco had no duty to create a modified position where Zamora performed only the various tasks she proposed without performing any of the essential functions that were beyond her medical limitations.

Furthermore, the "part time position in merchandising" that Zamora expressed interest in was a position as a morning stocker. *See* ECF No. 20-1 at 16–17. As with her previous stocker position, the morning stocker role would require Zamora to perform essential functions that involved lifting, pushing, and pulling items greater than ten pounds. *Id.* Zamora suggested in

6

response during her JAM that she could clean and set up clothing for the rest of the stocker team, but Costco informed her that such an arrangement would be excusing essential functions of the job. *See id.* Because it is well established that "FEHA does not obligate the employer to accommodate the employee by excusing him or her from the performance of essential functions," Zamora is unable to show that she is a "qualified individual" for her prima facie case. *See Nealy v. City of Santa Monica,* 234 Cal. App. 4th 359, 375 (2015) (concluding that in a job where heavy lifting constituted an essential function, restructuring that position to eliminate heavy lifting "is not a reasonable accommodation").

Finally, to the extent Zamora claims that Costco failed to engage in a timely, good faith, interactive process to determine reasonable accommodations or that Costco failed to accommodate Zamora by strictly enforcing its leave policy, the Court rejects those claims. Costco adequately engaged with Zamora through the JAM to determine whether there were any suitable vacant positions for which Zamora qualified—walking her through the different vacant positions and seeking her input as to any accommodations that would allow her to perform those jobs. *See* ECF No. 19-1 at 180–82. And as Costco allowed Zamora to take medical leave exceeding its official one-year policy, Costco reasonably accommodated Zamora to try and find vacant positions that would work with her medical restrictions. *See Nealy*, 234 Cal. App. 4th at 377–78 ("A finite leave of absence may be a reasonable accommodation to allow an employee time to recover, but FEHA does not require the employer to provide an indefinite leave of absence to await possible future vacancies.").

### B.   Wrongful Termination Claim

Zamora's claim for wrongful termination in violation of public policy overlaps entirely with her FEHA claims. *See* ECF No. 1-1 ¶¶ 26–33. Because the Court grants summary judgment for Costco on Zamora's disability discrimination and reasonable accommodation claims, it will also grant summary judgment on Zamora's claim for wrongful discharge in violation of public policy.

### C.   Rule 56(d)

Zamora requests that if the Court is not inclined to deny Costco's summary judgment

7

motion, it should at least defer its decision and reopen discovery under Rule 56(d) so that Zamora can depose Costco's corporate witnesses. ECF No. 20 at 8–9. Rule 56(d) of the Federal Rules of Civil Procedure provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may: (1) defer considering the motion [for summary judgment] or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Generally, Rule 56(d) allows a court to deny or postpone a motion for summary judgment "if the nonmoving party has not had an opportunity to make full discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). To prevail on a Rule 56(d) motion, the "parties opposing a motion for summary judgment must make (a) a timely application [that] (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." *Blough v. Holland Realty. Inc.*, 574 F.3d 1084, 1091 n.5 (9th Cir. 2009) (quotation marks and citations omitted). Courts generously grant Rule 56(d) motions, "unless the non-moving party has not diligently pursued discovery of the evidence." *Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773–74 (9th Cir. 2003) (citations omitted).

  Here, Zamora fails to specifically identify any relevant information she seeks from the depositions. She merely asserts that she has been deprived "from submitting critically important factual information to oppose" Costco's motion for summary judgment. ECF No. 20 at 8. For that reason alone, her request for a continuance must be denied.

  Zamora also was not diligent. Fact discovery was open from December 5, 2023 to September 20, 2024, but it appears that Zamora did not notice the deposition of a single Costco employee during that time. Instead, on June 24, 2024, she sent an email requesting the deposition of a 30(b)(6) witness on a lengthy list of topics. ECF No. 20-2 at 4. After some initial back and forth, Costco responded substantively on July 24, 2024 that the list of topics was overly broad and that the topics in question were better suited either to written discovery or to the deposition of a percipient witness. ECF No. 22-2 at 2-5. Costco specifically refused to produce a 30(b)(6)

witness on the requested terms and indicated it would litigate the matter if necessary. *Id.* at 5. At that point, the discussion ended—rather than serve different discovery, bring the dispute to the court's attention, or request a continuance of the fact discovery deadline, Zamora did nothing. Zamora has thus also failed to demonstrate diligence. *See Cross v. Cent. Contra Costa Transit Auth.*, No. 21-CV-01312-JST, 2024 WL 2868515, at *3 (N.D. Cal. June 5, 2024) ("If Cross believed additional time was necessary to complete discovery in order to effectively oppose summary judgment, she could—and should—have sought to amend those dates prior to their expiration. Instead, she waited until the day her response to CCCTA's motion was due."); *Innovative Fabrication Sch., Inc. v. Am. Fabrication Acad., Inc.*, No. CV 22-180-MWF (JEMX), 2023 WL 6787808, at *6 (C.D. Cal. June 7, 2023) ("Plaintiff requested related information early in the discovery period but did not pursue a single discovery motion when Defendants rebuffed Plaintiff's request. Plaintiff's belated request for postponement under Rule 56(d) is therefore unavailing.").

The Court denies Zamora's request to postpone adjudication of Costco's motion for summary judgment under Rule 56(d).

## CONCLUSION

For the foregoing reasons, the Court grants Costco's motion for summary judgment. The clerk shall enter judgment for the Defendant Costco.

**IT IS SO ORDERED.**

Dated: January 3, 2025



JON S. TIGAR
United States District Judge

9